UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDROS THYMARAS,<br><br>Defendant. | 5:14-CR-50063-JLV<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (DOC. 88) |

**INTRODUCTION**

Defendant, Alexandros Thymaras, filed a motion to compel the government to turn over certain discovery. (Doc. 88). United States District Court Judge Jeffrey L. Viken, Chief Judge, referred Mr. Thymaras' motion to this magistrate judge for determination.

**FACTS**

Alexandros Thymaras first appeared before the Court on a Complaint on August 12, 2014. United States Magistrate Judge Veronica Duffy was concerned about releasing him, primarily for immigration and nationality related reasons. Mr. Thymaras was in the United States on a Visa that would expire on November 2, 2014, Immigration and Customs Enforcement could deport him to Canada if he stayed past that date, and United States Probation would be unable to supervise him in Canada. Judge Duffy ordered Mr. Thymaras be detained pending trial or resolution of the barriers to supervision.

1

On August 13, 2014, Mr. Thymaras was charged in an Indictment with Attempted Commercial Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), and 1594(a).  He then reappeared before Judge Duffy on August 18, 2014, for an initial appearance, arraignment, and bail review hearing.  At this hearing, defense counsel stated and the United States agreed that Immigration and Customs Enforcement concluded that Mr. Thymaras is a United States Citizen.  Judge Duffy granted Mr. Thymaras' bond because there were no longer immigration related barriers to release and he would be able to satisfy the conditions imposed upon him.

Mr. Thymaras then filed a motion to suppress on March 11, 2015.  (Doc. 51).  In his motion to suppress he argued, in part, that he was a Canadian Citizen entitled to the protections of the Vienna Convention.  (Doc. 52).  He made no mention of his dual citizenship.  On April 22, 2015, the day before the evidentiary hearing, Assistant United States Attorney Sarah Collins (hereinafter "AUSA Collins") filed a motion to reopen the issue of detention.  (Doc. 60).  In this motion, the United States argued that "the defendant would have remained in custody pending trial, had he not provided evidence that he was a United States citizen." (Doc. 60 at p. 4).  The United States argued that the information Mr. Thymaras provided to the Court was false either at the detention hearing or in the motion to suppress.  (Id.)  "As such, either . . . his bond should be immediately revoked . . . or his assertions in his...motion to suppress are false and . . . should be withdrawn by him and disregarded by the Court." (Id.)

2

At the suppression hearing, the Court addressed the issue of detention. It was at this hearing that defense counsel expressed concern that the United States' motion was filed on the eve of the hearing and without notice of the filing. (Doc. 64 at p. 7). The United States responded that the motion was filed the day before the hearing because Mr. Thymaras was granted permission to travel to the District of Arizona. (Doc. 64 at p. 8). The United States wanted to wait until his return to the District of South Dakota to reduce his ability to flee. (Id.) The United States noted that it could have filed and usually does file an *ex parte* motion to revoke bond. (Id.) The defendant conceded on the record that he was a dual citizen of the United States and Canada. Citing Mr. Thymaras' shifting position on his citizenship, the Government would not withdraw the motion to revoke. The motion to revoke bond was denied. (Doc. 63).

During informal conversations on the day of the evidentiary hearing, the United States allegedly informed Mr. Thymaras of its intention to seek a Superseding Indictment against him adding a charge of Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b). The United States communicated its intention again shortly thereafter in an email. (Doc. 90-1 at p. 5).

On May 15, 2015, the United States successfully sought from the grand jury an added a charge in a Superseding Indictment of Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b). Mr. Thymaras contends that this added charge in the Superseding Indictment is retaliation for asserting his dual citizen argument in the suppression motion

3

and exercising his right to a suppression hearing.  Mr. Thymaras sought discovery related to the added charge and the United States informed him that there was "no additional discovery due to the Superseding Indictment."  (Doc. 90-3 at 2).  Mr. Thymaras filed a motion to dismiss the Superseding Indictment on the basis of vindictive prosecution.  (Doc. 73).

As part of the United States' response to the vindictive prosecution motion, AUSA Collins represented that the decision to seek the Superseding Indictment was the result of a new policy being adopted by a "national advisory committee" of which AUSA Collins is a member.  (Doc. 78 at p. 8).  Additionally, AUSA Collins represented that all future cases similar to Mr. Thymaras' would be handled by adding a charge of attempted enticement of a minor using the Internet in a Superseding Indictment.  (Doc. 78 at p. 6).  Defendant strongly doubts the veracity of the justification provided by the Government.

Defendant asks this court to compel the production of documents and information relating to the policy changes of the national advisory committee.  He requested "without limitation, all of the following documents and information with respect to the alleged 'national security advisory committee:'"

1. The full name of the advisory committee, when you [AUSA Collins] were appointed to it, evidence of the appointment, the date when the conversation occurred that convinced you to add the superseding charge, and the names of the other members of the advisory committee who were present for this conversation as to including the subject charge.
2. The names, affiliations and contact information of all of the individuals who "convinced" you, or were in any manner involved in convincing you (together with all existing documents substantiating same) as to "...one of the prosecutors was a member of a federal advisory committee, members of which had

convinced her that prosecuting under both 18 U.S.C. § 1591 as well as § 2422(b) was the appropriate manner in which to charge cases like the defendant's." (Opposition Br., p. 12, lines 8 through 11).

3. Under what, and whose, authority do the "national advisory committee" and the "federal advisory committee" operate? Is it an NGO, like the National Center for Missing and Exploited Children, or Children's Defense Fund? Is it a government agency, bureau or department (and if so, which one) or non-for-profit? Please provide complete copies of all formation documents and organizational bylaws, structure and agreements with any city, state or federal organization or non-for-profit group.

4. A list of the names, affiliations, appointments and contact information for each of the members of the "national advisory committee" and the "federal advisory committee," including any staff, personnel, volunteers and/or liaisons to any other organization (government, non-government or otherwise).

(See Doc. 90-1 for the request).

Also requested in the letter was "production of any and all email correspondence with defense counsel wherein it was stated that 'the United States would be handling all future cases [in the same manner as Mr. Thymaras' by adding a charge of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b)]." (Doc. 90-1 at p. 3). This request was the result of defense counsel apparently having no email stating that all future cases would be handled in the same manner as Mr. Thymaras'.[1]

Mr. Thymaras also requested "whatever documents exist from the U.S. Attorneys' office regarding the conversation or approval to add this charge in

---

[1] Mr. Thymaras disputes that the United States informed him that all future cases would be handled in the same manner as his. Though the United States stated in its response to the motion to dismiss the indictment that it explained to Mr. Thymaras that this was how future cases would be handled, neither party provided emails supporting this claim. The only email was provided by Mr. Thymaras and it discusses only Mr. Thymaras' charge. (Doc. 90-1).

the instant matter or all future matters, and the name of your supervisor and co-counsel that were part of the referenced discussions."  This request was based upon the April 24th email (Doc. 90-1 at p. 5) from AUSA Collins that the decision to add a second charge was a result of discussions with co-counsel and a supervisor.

Mr. Thymaras questions the decision to seek the Superseding Indictment based on the timing of the indictment and the Government's explanation for seeking the additional charge.  He alleges that the above discovery is material to his defense, citing to Federal Rule of Criminal Procedure 16(a)(1)(E).

Rule 16(a)(1)(E) states that "[u]pon a defendant's request, the Government must permit the defendant to inspect and to copy or photograph . . . papers, documents . . .[and] tangible objects . . . if the item is within the Government's possession, custody, or control and the item is material to preparing the defense."

Mr. Thymaras claims that evidence is material if "it enables a defendant to significantly alter the quantum of proof in his or her favor."  (Doc. 89 at p. 9).  Evidence is also material where there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation . . . or assisting impeachment or rebuttal."  (Id.) Defendant further claims that information surrounding the Government's policy is important to discover whether the decision to seek the Superseding Indictment was genuine or a post-hoc justification in an act of vindictive prosecution.  He argues that this goes to his ultimate defense because the new charge is not based on any

new information. "[T]he Government's proffered defense, as insufficient as it is, brings certain information about the advisory committee to the crux of Thymaras' ultimate defense, which is thus discoverable pursuant to Rule 16." (Doc. 99 at p. 6).

The United States argues that the documents and information requested by the defendant are not covered by the federal rules. It argues that a different, stringent standard applies to discovery requests relating to a vindictive prosecution claim. It argues that the barrier the defendant must overcome is "significant" before he may receive discovery on a claim of vindictive prosecution. Moreover, the Government claims the "deliberative process privilege" protects the documents the defendant is requesting.

## DISCUSSION

### I.   Whether Thymaras is Entitled to Discovery to Support his Vindictive Prosecution Claim

The Federal Rule of Criminal Procedure 16(a)(1)(E) generally applies to a discovery request for documents and other information relating to vindictive prosecution. However, the United States Supreme Court held in <u>United States v. Armstrong</u>, that "Rule 16(a)(1)[(E)][2] authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." 517 U.S. 456, 463 (1996). "Defense" in the Rule is understood as only a "shield" where the "'defense' means an argument in response to the

---

[2] Now 16(a)(1)(E), but was 16(a)(1)(C) at the time of the decision. This changed with the 2013 Amendment to the Federal Rules of Criminal Procedure.

prosecution's case in chief." Id. at 462.  The Court went on to reason that "[a] selective prosecution claim is not a defense to the merits of a criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Id. at 463.  In a selective prosecution claim, the constitutional constraint at issue is the "equal protection component of the Due Process Clause of the Fifth Amendment." Id. at 464 (other citations omitted).

In the selective prosecution context, at least four cases have emerged from the Eighth Circuit Court of Appeals that recognize the connection between discovery and the standard for selective prosecution.[3]  See United States v. Arciniega, 569 F.3d 394, n.2 (8th Cir. 2009) (defendant did not make a "credible showing of different treatment of similarly situated persons" to support discovery for a claim of a violation of his right to equal protection; United States v. Stuttley, 103 F.3d 684, n. 2 (8th Cir. 1996) (to obtain discovery, defendants had to make showing required by Armstrong); United States v. Perry, 152 F.3d 900, 903 (8th Cir. 1998) (defendant is entitled to discovery on his selective prosecution claim if he can present "some evidence that tends to show the existence" of both elements of selective prosecution); United States v. Cammisano, 546 F.2d 238, 242 (8th Cir. 1976) (before a defendant may "subpoena documentary evidence related to a selective

---

[3] Selective prosecution requires that a defendant show two elements.  First, that "people similarly situated to [the defendant] were not prosecuted."  Second, "the decision to prosecute was motivated by a discriminatory purpose." United States v. Peterson, 652 F.3d 979, 981 (8th Cir. 2011) (citing United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004)).

prosecution defense, the party must first show a 'colorable basis' for the claim," which requires "some evidence tending to show the existence of the essential elements of the defense" and the documents must be probative of the elements).

Similarly, at least one Eighth Circuit case ties discovery to the elements of vindictive prosecution using the reasoning in a selective prosecution case. United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004) (the defendant had to produce some credible showing of the elements of selective *or* vindictive prosecution to be entitled to discovery) (emphasis added).  Several other courts have interpreted the standard for discovery to be closely linked with the standard for proving the merits of a vindictive prosecution claim.  See United States v. Bucci, 582 F.3d 108, 113 (1st Cir. 2009) ("In light of the presumption that a prosecutor has acted in good faith in exercising [her] charging decisions, courts require a defendant seeking discovery first to come forth with 'some' objective evidence tending to show the existence of prosecutorial vindictiveness"); United States v. Wilson, 262 F.3d 305, 315 (4th Cir. 2001) [4] ("even before a court allows a defendant to have discovery on the Government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct"—a rigorous standard); United States v. Sanders, 211 F. 3d 711,

---

[4] "A significant barrier to discovery is necessary because discovery 'imposes many of the costs present when the government must respond to a prima facie case of selective prosecution'; it diverts governmental resources and discloses prosecutorial strategies."  United States v. Wilson, 252 F.3d at 315 (quoting 97 F.3d 739, 743 (4th Cir. 1996); Armstrong, 517 U.S. at 464; and Sanders, 211 F.3d at 717).

717 (2nd Cir. 2000)[5] (seeing no reason to apply a different standard to vindictive prosecution than selective prosecution, the "defendant must provide some evidence tending to show the existence of the essential elements of [vindictive prosecution]"); United States v. Heidecke, 900 F.2d 1155, 1158 (7th Cir. 1990)[6] (adopting the standard to compel discovery in selective prosecution claims, "the defendant must show a colorable basis for the claim," which is "some evidence tending to show the essential elements of the claim).

Based on the above authorities, in order for Mr. Thymaras to obtain discovery to support his vindictive prosecution claim, as opposed to defending against the prosecution's case in chief, he must produce some evidence tending to show the existence of vindictive prosecution.

Without deciding the merits of Mr. Thymaras' vindictive prosecution claim, this Court must evaluate the evidence provided and determine whether he is entitled to discovery.  Discovery to support such a claim is subject to a rigorous standard.  See, e.g., Perry, 152 F.3d at 903 (the justifications for a rigorous standard for selective prosecution require a "correspondingly rigorous standard for discovery in aid of such a claim").

A defendant seeking to demonstrate prosecutorial vindictiveness "must show that the superseding indictment containing additional charges was

[5] "Whether a defendant claims selective prosecution or vindictive prosecution, 'examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.'" Sanders, 211 F.3d at 717 (citing Armstrong, 517 U.S. at 465 (other citations omitted)).

[6] The defendant's "claim of vindictive prosecution must rise beyond the level of unsupported allegations."  Id.  (citing United States v. Catlett, 584 F.2d 864, 865 (8th Cir. 1978)).

sought in retaliation for exercising constitutional or statutory rights." United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015). A defendant can prove vindictiveness with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." Id. (other citations omitted). If a defendant lacks evidence of the vindictive or improper motive, he may, "in rare instances, rely upon a presumption of vindictiveness if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." Id. (other citations omitted). Although such a presumption may arise when a prosecutor increases the number or severity of charges, "if any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish . . . no presumption of vindictiveness is created." United States v. Punelli, 892 F.2d 1364, 1371 (8th Cir. 1990) (other citations omitted). The defendant carries a heavy evidentiary burden. Id. Prosecutors have broad discretion in "carrying out their duty to enforce criminal statutes." Id. (other citations omitted).

In determining whether a presumption of vindictiveness applies, a court must examine the prosecutor's actions "in the context of the entire proceedings." Id. at 880 (other citations omitted). There is a presumption of regularity supporting a prosecutor's decisions and, "in the absence of clear evidence to the contrary, courts presume that [a prosecutor has] discharged [her] official duties." Id. (other citations omitted). The Eighth Circuit rejected

11

the assertion that timing alone "gives rise to a reasonable likelihood of vindictiveness." Chappell, 779 F.3d at 881.  It has also rejected the assertion that the presumption applies "whenever the prosecution has knowledge of the facts essential to the other charges at the time of the original indictment, trial, and conviction." Id. (citing United States v. Goodwin, 457 U.S. 368, 384 (1982)).  The Court in Goodwin, noted that a prosecutor, while preparing for trial, "may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance." 457 U.S. at 2492.

As it relates to Mr. Thymaras' request for discovery, he has failed to show any evidence that the prosecution acted vindictively.  When examining the prosecutor's actions in the context of the entire proceedings, there is no objective evidence of vindictive prosecution.  This Court had the benefit of observing the entirety of the suppression hearing and bond hearing.  Like his memorandum in support of the motion to suppress (Docket 52), Mr. Thymaras again, is less than candid with the Court in his motion to compel and supporting memoranda (Dockets 88, 89, and 99).[7]  Mr. Thymaras argues that the government filed the motion to revoke his bond and added an additional charge in a Superseding Indictment because he exercised his constitutional

---

[7] Despite being admonished regarding the lack of candor with the Court, Mr. Thymaras continues to take liberties with the facts in his pleadings.  In Docket 74, Mr. Thymaras represents that "The Government's application was so questionable that, in addition to defense arguments, Magistrate Judge Daneta Wollmann denied the application without the need for opposition papers to be filed."  (Docket 74 at p. 5).  This also is a misrepresentation of the record attempting to lead the court to believe that the Government's motion was baseless.  The motion was denied only once the issue of Mr. Thymaras' citizenship was clarified and upon his admission that he was a dual citizen.

rights by seeking to suppress evidence.  This is simply untrue and unsupported by the record.  On the contrary, it was Mr. Thymaras' own actions in asserting that Mr. Thymaras was a Canadian citizen, without mentioning that he was also a United States citizen and the legal implications that had upon his arguments.  Prompted by the factual misrepresentation to the Court regarding Mr. Thymaras' citizenship, the Government filed the motion to reopen the issue of detention (Docket 60).  The pleading, as well as the argument of counsel, establish that the Government was seeking that Mr. Thymaras withdraw his arguments which relied upon the factual misrepresentation that he was solely a Canadian citizen.  The Government made no mention of any of Mr. Thymaras' other suppression arguments.  Mr. Thymaras conceded during oral arguments[8] on the motion to compel, that he was not threatened to withdraw his other suppression arguments, to-wit: probable cause to make the arrest.  The Court finds Mr. Thymaras' assertion that the Government filed the motion to reopen the issue of detention and filed additional charges based upon his exercise of constitutional rights to pursue suppression issues to be completely unsupported and contrary to the record.

Additionally, Mr. Thymaras argues that there was no new evidence to support the added charge.  During the evidentiary hearing, much testimony and argument was presented regarding the fact that Mr. Thymaras lacked the funds to complete the criminal transaction.  The significance of the money in Mr. Thymaras' pocket became more apparent during the evidentiary hearing.

---

[8] Oral arguments were held on January 8, 2016.

The Government has represented to the Court that the additional charge would allow the Government to more easily overcome this defense.  These facts constitute circumstances which justify additional charges as contemplated by U.S. v. Chappell, 779 F.3d 872 (8th Cir. 2015).

Lastly, Mr. Thymaras asserts that he was treated disparately from other Sturgis Rally defendants.  He cites no authorities supporting his position that disparate treatment constitutes vindictive prosecution.  Additionally, his argument is factually unsupported. The Government represented at the hearing on the motion to compel that in every 2015 case in the Western Division that is similar to Mr. Thymaras' case, the Government has charged both Attempted Commercial Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), and 1594(a) and Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b).  Furthermore, one defendant charged with Attempted Commercial Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), and 1594(a) at same time as Mr. Thymaras, was later charged in a Superseding Indictment with Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b).  See United States v. Fielding, 5:14-cr-50064-JLV-1.

While the prosecution did increase the number of charges, Mr. Thymaras has presented nothing to outweigh the Government's presumption of regularity.  Mr. Thymaras is only entitled to discovery if there is some evidence tending to show the essential elements of the vindictive prosecution claim.  He must show some evidence that the Superseding Indictment was sought in

14

retaliation for exercising his constitutional or statutory rights, or a likelihood of vindictiveness.  Mr. Thymaras has failed to meet his burden and the Court will not grant the motion to compel on this theory.

## II.     Whether Thymaras is Entitled to Discovery as a Defense to the Charges in the Superseding Indictment

Mr. Thymaras claims that the "discovery is, at a minimum, material to preparing [his] defense to the pending charges." (Doc. 99 at p. 4).  He argues that he is entitled to discovery as long as the information he seeks is "material" under Rule 16(a)(1)(E) and that the Armstrong line of cases has no effect on his request.  (Doc. 99 at p. 5-7).

The added charge in the Superseding Indictment is Attempted Enticement of a Minor Using the Internet, in violation of 18 U.S.C. § 2422(b). This crime is defined as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The elements to prove the offense are as follows:

1.  The defendant knowingly used a device with internet capability to attempt to persuade, induce, entice, or coerce an individual under the age of eighteen years of age to engage in prostitution; and
2.  The defendant believed that such individual was less than eighteen years of age; and
3.  That if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of the United States or the State of South Dakota.

15

Thompson Reuters, Eighth Circuit Model Jury Instructions, August 5, 2014.

As previously stated, Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government to "permit the defendant to inspect and to copy or photograph . . . papers, documents . . . or tangible objects . . . if the item is within the Government's possession, custody, or control and the item is material to preparing the defense."

A defendant who requests documents, believing them to be material to his defense, must "make a prima facie showing of materiality." <u>United States v. Tornquist</u>, No. CR 11-50118, 2012 WL 2862864, *3 (D.S.D. July 11, 2012) (citations omitted).  "Evidence is material if it enables a defendant to significantly alter the quantum of proof in his or her favor." <u>Id.</u>  (citing Wright, Supra; <u>United States v. Baker</u>, 453 F.3d 419, 425 (7th Cir. 2006); <u>United States v. Ross</u>, 511 F.2d 757, 763 (5th Cir. 1975) (internal quotations omitted)). "Evidence is material under Rule 16 if there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation...or assisting impeachment or rebuttal." <u>Tornquist</u>, 2012 WL 2862864 at 3 (citing <u>United States v. Graham</u>, 83 F.3d 1466, 1474 (D.D.C. 1996). The materiality standard is "not a heavy burden." <u>Graham</u>, 83 F.3d at 1474 (other citations omitted).

In <u>Tornquist</u>, the defendant filed a motion to compel an unredacted copy of a lab report and other documents. 2012 WL 2862864, at *3.  The defendant never explained "what the documents he [was] requesting represent[ed], how they [would] be used, why they [were] relevant, or anything else."  <u>Id.</u> at *4.

16

The Government only objected to a few of the requested items, but provided an unredacted copy of the lab report to Judge Duffy for *in camera* review.  Id. After review, Judge Duffy did not find any information in the unredacted copy that would be relevant or material to the defendant's request.  Id.  Judge Duffy granted the defendant's motion only to the extent the Government conceded it would provide the requested information.  Id.

In Baker, the defendant was convicted for possessing a gun as a felon. 453 F.3d 419.  He argued that the conviction should be vacated because the Government did not disclose the history of the gun's ownership, in violation of Brady and Rule 16.  Id. at 422.  After Baker moved for disclosure of exculpatory evidence, the Government turned over various documents responsive to the request.  Id. at 421.  The Government submitted additional contested documents to the court for *in camera* review.  Id.  These documents consisted of interviews of two individuals and an analysis of fingerprints found on the gun relating to a murder committed prior to the defendant's alleged possession of the gun.  Id.  The defendant wanted the interviews and fingerprint analysis so he could investigate the weapon's background to prove his theory that "the gun was either already present on the street when he arrived or that one of the officers brought the gun to the crime scene."  Id. at 422.  The defendant also alleged, without explanation, that the history would be useful to impeach the Government's witnesses.  Id.

The district court determined that the documents were irrelevant.  Id. at 421.  The Government had already stipulated that, at trial, it would not

17

reference the murder or present documents that connected the gun to the murder.  Id.  The documents reviewed by the court were not exculpatory or helpful for impeachment.  Id. at 422 (the defendant did not claim the reports were exculpatory, but could lead to exculpatory material; the court rejected this argument stating, "materiality focuses not on trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt"). The court also reasoned that gun ownership is not dispositive in proving that defendant was a felon in possession of a firearm.  Id. at 422.  History of gun ownership would not have been helpful to the defendant and his stated theories of the case.

Moreover, no Rule 16 violation occurred because the contested documents were not used in the Government's case-in-chief and they were not obtained from the defendant.  Id. at 424.  The documents were not material because they would not have "enabled [the defendant] to significantly alter the quantum of proof in his favor."  Id. at 424 (other citations omitted).  The documents were not incriminating, exculpatory, or helpful for impeachment. Id. at 424-25.  Therefore, the district court did not err in denying the defendant's request for the information.

Mr. Thymaras has failed to show how the information he is requesting is necessary to his ultimate defense.  Similar to the defendant's deficiencies in Tornquist and Baker, Mr. Thymaras provides no explanation as to *how* the requested discovery is relevant to his ultimate defense against the Superseding Indictment.

Mr. Thymaras' ultimate defense against the superseding charge presumably would address his knowledge that he was allegedly attempting to induce someone he believed to be a minor to engage in prostitution and that his attempt would have been a federal or South Dakota state crime.  Again, it is unclear, how the United States' allegedly vindictive actions would be relevant or material to defending against the superseding charge and how the information sought would significantly alter the quantum of proof in his favor.  Thus, discovery will not be compelled under this theory.

## CONCLUSION

Based on the foregoing law and analysis, it is hereby

ORDERED that defendant Alexandros Thymaras' motion to compel (Doc. No. 88) is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CRIM. P. 58(g)(2); 59(a).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  FED. R. CRIM. P. 59(a).  Objections must be timely and specific in order to require review by the district court.

Dated January 12th, 2016.

BY THE COURT:

DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE